UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS S. PENN, DAVID W. PENN,
and PENN STATION, INC.,

        Plaintiffs,

                                Case Number 06-13578-BC
v.                               Honorable Thomas L. Ludington

BP CORPORATION NORTH AMERICA,
INC., and DELTA ENVIRONMENTAL
CONSULTANTS, INC.,

        Defendants.
_____ /

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants BP Corporation of North America ("BP") and Delta Environmental Services'

("Delta," collectively "Defendants") motion for summary judgment pursuant to FEDERAL RULE OF

CIVIL PROCEDURE 56 is presently before the Court. Plaintiffs Douglas S. Penn ("Doug Penn"),

David W. Penn ("David Penn"), and Penn Station, Inc., ("Plaintiff Corporation," collectively

"Plaintiffs") filed a complaint alleging five state causes of action from alleged groundwater

contamination.

Plaintiffs' first amended complaint alleges that BP owns an underground storage tank

("UST") that leaked petroleum into the groundwater below Plaintiffs' grocery store, Penn Station.

Dkt. # 1-4 at 18 ¶ 10. As a result, Plaintiffs contend that the contamination harmed Plaintiffs and

hindered their ability to obtain small business financing and forced Plaintiffs to close down the

grocery store. *Id.* at 21-22 ¶¶ 35, 37.

Plaintiffs allege that BP's and Delta's conduct equate to trespass, nuisance, and negligence.

Additionally, Plaintiffs allege that BP violated Mich. Comp. Laws § 324.1701 *et seq.* and Mich.

Comp. Laws § 324.11101 *et seq.* Defendants moved for summary judgment with regard to all counts. On February 19, 2008, the Court held oral arguments to address Defendants' motion. For the reasons stated below, the Court will **GRANT** Defendants' motion in the entirety.

I

The events giving rise to the instant litigation began in 1999 when David Penn decided to open and operate a grocery store without any prior experience in the industry. Dkt. 19-4 at 3. David Penn located an Atlanta, Michigan retail location for sale across the street from a gas station owned by Winston Suiter ("Suiter's Station"). Suiter's Station is a typical, commercial filling station with a 4,000 gallon UST underneath Suiter's Station for the purpose of storing petroleum. While considering the property for purchase, Plaintiffs visited the property multiple times and observed "steel caps" in the parking lot. *Id.* at 4. Plaintiffs did not inquire as to the nature of the steel caps, believing that they were a part of the city water system. *Id.* In fact, those steel caps were groundwater monitoring wells installed for the purpose of determining if leaks from the UST in 1997 and 1998 contaminated the groundwater below the grocery store.

David Penn invited his brother, Doug Penn, to open the store as a joint venture. Doug Penn agreed, and Plaintiffs offered the owner of the property, Independent Bank, $165,000.00 for the property on August 25, 1999. Dkt. # 19-4 at 17-18. In November of 1999, Plaintiffs signed a contract to purchase the property for the reduced purchase price of $105,000.00. In July of 2000, Plaintiffs sought and obtained $150,000.00 financing from National City Bank for the purpose of making improvements on the property. The Small Business Administration guaranteed the National City Bank loan.

Plaintiffs owned and operated the store until 2005. During those years of operation, Penn

Station never earned a profit. In 2005, Plaintiffs were unable to afford the monthly mortgage payment, and sought additional financing. Plaintiffs were unable to attain alternative financing and they defaulted on their loan from National City Bank. The parties entered into a forbearance agreement secured by the real property, which Plaintiffs defaulted. Dkt. # 19-17. It appears from the pleadings and Plaintiffs' counsel that National City Bank foreclosed and took ownership of the property. *See* Dkt. # 1-4 at ¶ 37.

Plaintiffs' basis for relief is predicated on the notion that BP owns the UST under Suiter's Gas Station. Dkt. # 1-4 at 18 ¶ 10. In support of the instant motion, BP submitted a bill of sale indicating that it sold the UST to Winston Suiter in 1979 for $1.00. Dkt. # 19-10 at 3. Moreover, BP submitted an affidavit from its custodian of records indicating the document's authenticity and demonstrating it is a business record, *See* FED. R. EVID. 803(6), excepted from the hearsay rule. Dkt. # 19-10 at 1-2. Filings with the MDEQ, however, indicate that an agent for BP indicated that BP is the "o/o" (presumably the owner/operator) of the UST. Dkt. # 25-4, 25-7, 25-9, 25-10, 25-12. BP's later filings indicate that BP is not the current owner of the UST. See Dkt. # 25-19. According to a MDEQ letter, Winston Suiter indicated that BP (formerly known as Amoco) abandoned the UST in 1979 "due to recorded losses of product." Dkt. # 25-6 at 5. Moreover, the MDEQ stated that an additional release of gas could have occurred "over 21 years ago" (sometime before 1979). *Id.*

Delta served as environmental consultants to address the spills on behalf of BP. Delta corresponded with the MDEQ and prepared reports documenting the contamination and indicating the corrective actions. Delta also notified Plaintiff of the contamination in 2005.

Unbeknownst to Plaintiffs, the UST beneath Suiter's Station allegedly had leaked petroleum into the ground. Plaintiffs offered a series of MDEQ correspondence and filings obtained from a

Freedom of Information Act request, which they contend demonstrates that BP owned the UST at the time of the contamination. Defendants contend that the exhibits are inadmissable because Plaintiffs have not demonstrated their authenticity, foundation, or exclusion from the hearsay rule.

Those objections notwithstanding, the documents demonstrate that the MDEQ believed that BP was responsible for a leak from the UST. On July 20, 1999, the Michigan Department of Environmental Quality ("MDEQ") informed BP of an audit of corrective action surrounding the UST under Suiter's Station. Dkt. # 25-3. According to the letter, the MDEQ confirmed two releases of petroleum into the ground occurring on March 24, 1997 and August 20, 1998. *Id.* at 2.

Delta undertook "corrective actions" at the behest of BP. On November 17, 1998, Delta submitted an Initial Assessment Report ("IAR") measuring the levels of contamination and clean-up activities. The MDEQ found that Delta IAR was incomplete and the MDEQ required Delta to undertake additional action. *Id.* at 2-4. Additionally, MDEQ stated that "[t]he reported data indicates that groundwater contamination has migrated beyond the property boundaries. Therefore, since the corrective action plan does not currently result in an unrestricted use of the off-site properties for any purpose, you are required to notify impacted off-site property owners . . ." *Id.* at 4. In a later correspondence, the MDEQ found additional deficiencies in the Final Assessment Report ("FAR"). *Id.* at 25-6. Moreover, the MDEQ repeatedly referred to the necessary corrective actions as "BP's responsibility." *Id.*

In 2005, Delta informed Plaintiffs that the UST under Suiter's Station had leaked. The letter stated that "[Delta] on behalf of [BP], would like to provide you with an update on the progress of corrective actions related to the . . . confirmed release at [Suiter's Station] . . . BP is continuing with corrective action activities until the environmental closure at the facility has been achieved." 19-15

at 1. The MDEQ indicated that the groundwater beneath Penn Station was contaminated, albeit by checking a box on a prepared form. *Id.* at 3. Plaintiffs maintain that this was the first time they were informed of the contamination.

At that time, Plaintiffs were attempting to secure additional financing from a California lender, Integrity Financial Group ("Integrity"), in order to avoid closure of the business. Plaintiffs allege that they had been pre-approved for a $247,000.00 loan prior to the contamination notice from Delta. Upon receiving notice of the contamination, Plaintiffs contend that they informed Integrity, causing the lender to deny the loan. Defendants submitted an affidavit from Integrity's commercial account manager, Darin Whitney ("Whitney"). Dkt. # 19-18. Whitney stated that Integrity denied the pre-approved loan of $247,000.00 due to Plaintiffs' low credit score and the existence of a forbearance agreement. *Id.* at 2. Additionally, Whitney stated that Integrity would have lent $165,000, but Plaintiffs never provided additional information to finalize the loan. *Id.* at 2-3. Plaintiffs have not sought to rebut this information.

Plaintiffs filed their complaint on October 3, 2005 naming BP and Independent Bank as defendants. Dkt. # 1. Plaintiffs filed an amended complaint on May 19, 2006 alleging trespass, nuisance, negligence, and negligence per se against BP and Delta. Additionally, Plaintiffs allege that BP violated Mich. Comp. Laws § 324.1701 *et seq.* and Mich Comp. Laws § 324. 11101.

It is also noteworthy that David Penn filed a Chapter 7 bankruptcy petition on June 27, 2006. Dkt. 19-13. The application listed the pending matter as a potential asset. Moreover, David Penn's trustee attended a previous status conference before this Court and indicated that the estate did not intend to pursue the matter.

Finally, Defendants contend that during discovery they served request for admissions

("RFAs"), FED. R. CIV. P. 36(a), on Plaintiffs' counsel on August 12, 2007. Plaintiffs' counsel indicated to the Court that she forwarded the RFAs to her clients with the instructions to complete them as soon as possible. Despite their counsel's instruction, Plaintiffs did not complete the RFAs in a timely manner. On October 19, 2007, David Penn and Penn Station filed answers to the RFAs. Douglas Penn never filed answers to the RFAs.

Defendant maintain that David Penn's and Plaintiff Corporation's responses were more than 30 days late, and that Douglas never filed a response. As a result, Defendant contends that the following have been conclusively established:

- Defendants do not own or operate any property from which the contamination originated.
- Defendants were not negligent.
- Defendants did not violate any environmental statutes.
- Plaintiffs are not asserting a claim against Defendants for trespass or nuisance.
- Plaintiffs' claims are based on mere speculation and conjecture.

See Dkt. # 19-8, 19-9, 19-10. Defendants contend that the assertions contained in the RFAs should be considered to be established as fact in this matter.

II

A motion for summary judgment under FEDERAL RULE OF CIVIL PROCEDURE 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III

The Court has subject matter jurisdiction over the matter pursuant to diversity of the parties. 28 U.S.C. § 1332. The Court the Court must apply Michigan law to Plaintiffs' state law claims. *E.g. Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Defendants' motion asserts numerous bases in support of its motion for summary judgment. Plaintiffs alleged five total causes of action against two defendants. Upon review of Defendants' motion and Plaintiffs' causes of action, the Court determines that there are several bases to grant Defendants' motion and that attention to a number of the arguments advanced by Defendants is simply unnecessary.

Doug Penn and David Penn have not demonstrated that they are real parties in interest capable of advancing the alleged causes of action. See FED. R. CIV. P. 17. First, as shareholders in Penn Central, Doug Penn and David Penn have not identified harm suffered by them separate and apart from the harm to the corporation. "In Michigan, the law treats a corporation as entirely separate from its shareholders, even where one person owns all the corporate stock." *Belle Isle Grill Corp., v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003) (citing *Industrial Steel Stamping, Inc. v. Erie State Bank*, 423 N.W.2d 317, 319 (1988)). "The doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle*, 666 N.W.2d at 279 (citing *Michigan Nat'l Bank v. Mudgett*, 444 N.W.2d 534 (1989)). If the individual shareholder can demonstrate that the party breached a duty owed to the shareholder individually, then the shareholder has standing to bring the identical claim as the corporation itself. *Id.* at 279-80.

The causes of action alleged by David Penn and Doug Penn rely on the allegation that Defendants' conduct lead to the financial harm of Penn Central. Neither alleges that he was personally injured, independent from the harm to Penn Central. Moreover, neither has demonstrated any individual duty owed to them as shareholders of Penn Central. Thus, David Penn and Doug Penn lack standing under Michigan law to assert claims as shareholders on behalf of the corporation. For this reason, the Court will grant summary judgment in favor of Defendants with respect to David Penn and Doug Penn.

Additionally, David Penn is also not a real party in interest because of his status as a debtor

in an ongoing bankruptcy proceeding. As the Sixth Circuit concluded in *In re Van Dresser Corp.*, 128 F.3d 945 (6th Cir. 1997):

> Property of a debtor's estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The commencement of the case is the moment the debtor files for bankruptcy. And it is well established that the interests of the debtor in property include causes of action. A debtor's appointed trustee has the exclusive right to assert the debtor's claim.

*Id.* at 947 (citations and quotations omitted); *see also In re Cottrell*, 876 F.2d 540, 542 (6th Cir. 1989) (holding that a personal injury action was an asset of the bankruptcy estate). Thus, a debtor's potential cause of action is the sole property of the bankruptcy estate, such that only the trustee may prosecute the rights of the debtor.

Here, it is uncontroverted that David Penn has filed a Chapter 7 bankruptcy petition. Any rights that he may have in this litigation, are the sole property of the trustee. The trustee has knowledge of this action, as David Penn listed this action as an asset on the petition and the trustee appeared before this Court. The trustee, however, has decided not to pursue this action on the estate's behalf. Thus, David Penn can not advance any claims because the estate is the proper plaintiff in this matter.

## B

Defendants are also entitled to summary judgment because Plaintiffs have failed to advance evidence that establish a factual dispute that (1) the groundwater below the property is contaminated, (2) the contamination is a result of a leak of the UST, (3) Defendants owned the UST, or (4) Plaintiffs suffered any harm as a result of the contamination. The lack of evidentiary support for basic allegations contained in the complaint provide another basis for the Court to grant Defendants' motion for summary judgment.

Despite the fact Plaintiffs' allegations of harm hinge on establishing that Defendants' conduct led to the contamination of Plaintiffs' groundwater, Plaintiffs have not retained an expert witness or conducted any scientific testing establishing whether the groundwater is contaminated and, if it is, its source. At the hearing, Plaintiffs' counsel acknowledged that Plaintiffs would not authorize the retention of an expert. As a result, Plaintiffs' sole factual basis for demonstrating contamination are two letters from MDEQ to Delta and a series of filings by an agent for BP. Dkt 25-3 to 25-18. Despite the inferences that can be drawn from these letters, Plaintiffs have not demonstrated that the MDEQ letters and filings are admissible and establish a factual dispute.

In the event that Plaintiffs had created a factual dispute demonstrating contamination, however, Plaintiffs have not offered any evidence that the contamination was a result of a leak from the UST under Suiter's Station. Just as discussed above, Plaintiffs have not offered an expert report indicating that the UST leak led to the contamination of Plaintiffs' property. Thus, Plaintiffs have not established a triable issue of fact that the UST leak was the proximate cause of Plaintiffs alleged harm. Without providing a factual basis establishing proximate cause, Plaintiffs are unable to survive summary judgment regardless of the legal theory relied upon.

Next, Defendants contend that Plaintiffs have not offer any evidence that BP or Delta owned and operated the UST. Defendants contend that in order for Plaintiffs to prevail in their causes of action, Plaintiffs must establish that Defendants owned the UST from which the contaminants emanated. See *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297 (Mich. Ct. App. 1995).

In support of the motion for summary judgment, BP offered a 1979 bill of sale indicating that BP sold "all capital assets, including underground storage tanks" to the owner of the gas station,

Winston Suiter.  Dkt. # 19-11 at 3.  Defendant also submitted an affidavit from BP's custodian of records attesting to the document's authenticity and demonstrating that it as a business record.

Plaintiffs allege that the MDEQ letters and filings infer that BP owned the UST at the time of the leak.  Though the MDEQ considered BP the responsible party, there is no indication that the MDEQ made a determination that BP was, in fact, the legal owner of the UST in 1997 and 1998.  The Court concludes that Plaintiffs have not raised a factual dispute that Defendants owned the UST at the time of the discharge.  Defendants submitted a bill of sale transferring the UST from BP to Suiter's Station in 1979.  Absent compelling evidence contradicting the bill of sale, the Court finds that Plaintiffs have not demonstrated that BP was the owner at the time of the alleged contamination.

Finally, Plaintiffs have not demonstrated that the alleged contamination caused any harm to them as individuals or to Penn Central.  Though Plaintiffs maintain that the knowledge of the contamination caused Integrity to reduce the amount it would loan Plaintiffs, the record does not indicate that.  Integrity's commercial account manager stated that David Penn's and Doug Penn's credit scores and the forbearance agreement were the reasons for reducing the loan.  See Dkt. # 19-18 at 2. Again, Plaintiffs have not introduced any contradictory evidence.

Moreover, Plaintiffs have not demonstrated any other type of monetary harm to Penn Station caused by the alleged contamination.  Though Plaintiffs owned the property in 2005, National City Bank foreclosed the property.  Plaintiffs have not alleged or demonstrated that they incurred any monetary harm, other than the effects from their inability to secure additional financing from Integrity.  Thus, Defendants are entitled to summary judgment in the absence of any demonstrated harm.

C

Additionally, Defendants contend that Plaintiffs failed to provide responses to Defendants' RFAs within the thirty day time period allowed for responses. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36(a)(3).

Defendants contend that David Penn and Plaintiff Corporation responded to the RFAs thirty-seven days after responses were due. Moreover, Doug Penn never responded. Plaintiffs' counsel indicated to the Court that she forwarded the RFAs to her clients with the instructions to complete them as soon as possible. As a result, Defendant contends that the following have been conclusively established:

- Defendants do not own or operate any property from which the contamination originated.
- Defendants were not negligent.
- Defendants did not violate any environmental statutes.
- Plaintiffs are not asserting a claim against Defendants for trespass or nuisance.
- Plaintiffs' claims are based on mere speculation and conjecture.

See Dkt. # 19-8, 19-9, 19-10.

Plaintiffs did not provide a justification for filing materially late responses, or no response at all. Their failure to respond or provide any type of justification leads this Court to conclude that the assertions contained therein to be admitted. These admissions conclusively establish that Defendant is entitled to summary judgment with respect to each of Plaintiffs' claims.

IV

For the reasons stated above, the Court will grant Defendants' motion for summary judgment in the entirety. The Court again notes that Defendants offered several other legal bases in support

of their motion for summary judgment.  In light of the relative clarity of the discussed grounds for summary judgment, the Court concludes it is unnecessary to address Defendants' alternative defenses.

Accordingly, it is **ORDERED** that Defendants BP Corporation of North America and Delta Environmental Services' motion for summary judgment [Dkt. # 19] is **GRANTED**.  All claims against Defendants are **DISMISSED WITH PREJUDICE.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 26, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 26, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS